# Wiley *v.* The State.

*Indictment for Murder.*

1. *Evidence relevant to question of self-defense.*—The defendant being on trial for the murder of his wife, whom he shot with a pistol and killed on her refusal to go home with him, and having proved that she was a woman of dangerous character, and testified for himself that he wanted to take her home because she had been drinking, and that, as he approached her, she cursed him, threw her hand towards her bosom, and stepped towards him; he may further testify that she owned a pistol, and was in the habit of carrying it in her bosom, although the evidence for the prosecution showed that no weapon was found on her body, that she was standing still when shot, holding her hands down in front of her person, and that he had threatened, while trying to borrow a pistol, that he would kill her if she did not go home with him.

FROM the Circuit Court of Pike.
Tried before the Hon. JOHN R. TYSON.

W. L. PARKS, for appellant, cited *State v. Graham*, 61 Iowa, 608; *Spivey v. State*, 58 Miss. 858; 9 Amer. & Eng. Encyc. of Law, 683.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—The appellant was indicted, tried, convicted and sentenced for life, for the murder of his wife, Dora Wiley. The killing by him was not controverted, but he relied on self-defense. The evidence for the State tended to show that, a short time before the killing, the defendant "had made several threats that he was going to kill Dora, his wife, if she did not go home and cook his supper, and said that he was going to ask her to go, and if she did not when he asked her, he would kill her; said threats were made at the time of, and after the defendant had gone to several to borrow a pistol; that defendant did borrow a pistol, and went to where deceased was, . . . and asked

[Wiley v. The State.]

her to go home and cook his supper. Deceased refused to go, and defendant shot her with a pistol, which resulted in her instant death. That no weapon was found on the person of. the deceased, and when she was shot she had a pocket handkerchief and bunch of keys, which she was holding in her hand, and that her hands were down and in front of her person, and that she was standing still when she was shot." The defendant testified in his own behalf that he borrowed the pistol, but for the purpose of shooting a dog. He denied having threatened deceased, and said that he had been threatened by her several times during the day; but admitted that he had been with her much of the time during the day, and that about a half hour before the killing he went off about a quarter of a mile and borrowed the pistol with which he shot deceased, and approached her to get her to go home with him, as she had been drinking; and that when he approached her she cursed him, and threw her hand towards her bosom, and stepped towards him, and he shot her. "Defendant also proved that deceased was a woman of dangerous character." The defendant then "proposed to prove by his own testimony, and would have shown, 'that deceased owned a pistol, and was in the habit of going armed with her pistol; that she carried it in the bosom of her dress, and defendant knew these facts.'" The court refused to admit this evidence, and an exception to this ruling presents the only point reserved for our consideration.

The action of the court was clearly erroneous. The facts proposed to be adduced directly tended to support the defendant's theory of self-defense. The deceased was a woman of dangerous character. The jury might have found, if they believed the defendant, that when he shot her she was advancing upon him in an angry and threatening manner, throwing her hand to her bosom. In connection with this evidence, which was admitted, the testimony which was excluded would have gone to show the imminency of defendant's peril of life or grievous bodily harm, considering the situation from his point of view. Her ownership of a pistol, the fact that she habitually carried it in the bosom of her dress, and the knowledge on the part of the defendant of these facts, put this evidence on the footing of an offer to prove, where a man has been killed, that the deceased threw his hand to his "pistol pocket" as he advanced upon the slayer, and it has never been doubted that such evidence is competent; it is indeed exceedingly common in murder trials. We have nothing to do with the weight of the evidence; that was a question purely for the jury, and it should

[Pierson v. The State.]

have been submitted to them along with all the other evidence in the case.

Reversed and remanded.